NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1531,-1543

BECKSON MARINE, INC., CAROLE A. BECKERER,
ELOISE BRADY, and JOAN A. JONES,

Plaintiffs-Appellants,

v.

NFM, INC.,

Defendant-Cross Appellant.

_____

DECIDED: July 28, 2005

_____

Before NEWMAN, CLEVENGER, and RADER, Circuit Judges.

RADER, Circuit Judge.

Beckson Marine, Inc. (Beckson Marine) owns U.S. Patent No. 4,363,350 (issued Dec. 14, 1982) ('350 patent). Beckson sued NFM, Inc. (NFM) in the United States District Court for the Western District of Washington alleging that certain of NFM's products infringe the claims of the '350 patent. The parties submitted the case to the district court for a final determination on the record. The district court found the claims of the '350 patent valid, enforceable, and not infringed. This court affirms the district court's claim construction and finding of validity of the claims of the '350 patent. Because this court affirms on validity, this court also affirms the dismissal of NFM's claims of inequitable conduct, Lanham Act violations, state law unfair competition violations, and anti-trust violations. However, because the district court clearly erred in

finding that the accused device does not satisfy the "means hingedly connecting" limitation, this court reverses the district court's finding of no infringement and remands.

I

This court set forth much of the background of both parties and the technology of the '350 patent in Beckson Marine, Inc. v. NFM, Inc., 292 F.3d 718, 720-22 (Fed. Cir. 2002) (Beckson Marine I). In this appeal, the dispute centers on claim 1 of the '350 patent:

1.  In a self-draining, leak-resistant boat window, in combination:

    (a) a frame body comprising a continuous mounting flange for engagement with an inner surface surrounding an opening in the wall of a boat,

    (b) said body including a spigot connected with said flange and defining the window opening and having a lower portion characterized by an upwardly-facing drain surface constituting a sill, said spigot being adapted to extend through said wall opening of the boat,

    (c) a window pane for closing off the window opening formed by the spigot, and

    (d) means hingedly connecting said window pane to said mounting flange,

    (e) said sill of the spigot having a portion which is downwardly offset with respect to remaining areas of the sill, said downwardly offset portion being provided with a sloping drain groove extending from a high location closely adjacent said mounting flange to a low location disposed remote from the mounting flange

    (f) said drain groove being open at the top for a substantial portion of its length, thereby defining an open channel which resists the tendency for residue to form therein and cause possible clogging.

In Beckson Marine I, this court vacated the district court's grant of summary judgment of no infringement and no invalidity and remanded the case for a full Markman hearing. Id. at 728. After holding a Markman hearing and construing the terms of the

claims, Beckson Marine filed new motions for summary judgment of infringement and validity. NFM also filed a motion for, inter alia, summary judgment of invalidity for anticipation and obviousness. Beckson Marine, Inc. v. NFM, Inc., No. C98-5531FDB, slip. op. at 11 (W.D. Wash. Aug. 15, 2004) (Summary Judgment Order). The district court denied Beckson Marine's motion for infringement, granted its motion for validity, and denied NFM's motion for invalidity. Id. Having upheld the validity of the claims of the '350 patent, the district court dismissed NFM's counterclaims of inequitable conduct, Lanham Act violations, state unfair competition, and anti-trust violations. Id. at 10.

The parties waived trial and submitted the case to the district court judge for a final determination on the record. Beckson Marine, Inc. v. NFM, Inc., No. C98-5531FDB, slip. op. at 1 (W.D. Wash. June 18, 2004) (Final Order). Having previously construed the "means hingedly connecting" element under 35 U.S.C. § 112, para. 6, Beckson Marine, Inc. v. NFM, Inc., No. C98-5531FDB, slip. op. at 11-13 (W.D. Wash. Mar. 19, 2003) (Construction Order), the district court determined that NFM's products do not infringe claim 1 of the '350 patent because they do not contain a structural equivalent of that element. Final Order at 4. Beckson Marine appeals the district court's finding of no infringement. NFM cross appeals the district court's exclusion of certain prior art from evidence, and dismissal of NFM's claims of inequitable conduct, Lanham Act violations, unfair competition under state law, and anti-trust violations, and the district court's finding of no personal liability of Mr. Frank Beckerer, Jr., the president of Beckson Marine.

II

A determination of infringement requires a proper interpretation of the scope and meaning of the claim followed by a comparison of the accused product to that claim scope. Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1320 (Fed. Cir. 2003); Carroll Touch, Inc. v. Electro Mech. Sys., Inc., 15 F.3d 1573, 1576 (Fed. Cir. 1993). This court reviews the district court's claim construction de novo, and its factual determinations for clear error. Golden Blount, Inc. v. Robert H. Peterson Co., 365 F.3d 1054, 1058 (Fed. Cir. 2004).

This court reviews grants of summary judgment without deference. Knoll Pharm. Co. v. Teva Pharms. USA, Inc., 367 F.3d 1381, 1384 (Fed. Cir. 2004). "Summary judgment is therefore appropriate when there is no genuine issue of material fact or when, drawing all factual inferences in favor of the nonmoving party, no 'reasonable jury could return a verdict for the nonmoving party.'" Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

"Evidentiary rulings are procedural matters that do not raise issues unique to patent law, therefore this court applies the law of the appropriate regional circuit in reviewing such rulings." Chimie v. PPG Indus., 402 F.3d 1371, 1376-77 (Fed. Cir. 2005) (citing ATD Corp. v. Lydall, Inc., 159 F.3d 534, 548 (Fed. Cir. 1998)). According to the law of the United States Court of Appeals for the Ninth Circuit, which controls here, a district court's exclusion of evidence is reviewed for an abuse of discretion. Watec Co. v. Liu, 403 F.3d 645, 650 (9th Cir. 2005).

A

Beckson Marine argues that the district court erred in construing the "means hingedly connecting" element of claim 1 under 35 U.S.C. § 112, para. 6. Beckson Marine correctly acknowledges that the "means" language of the limitation raises a presumption of a means-plus-function limitation, but then argues that the claim recites sufficient structure to overcome that presumption. Although sufficient structure may indeed overcome the presumption of means-plus-function treatment, see Sage Prods. Inc. v. Devon Indus., 126 F.3d 1420, 1427-28 (Fed. Cir. 1997), claim 1 does not recite sufficient structure, material, or acts to overcome the presumption. Indeed, claim 1 cites no structure limiting the "means hingedly connecting" language. The adverb "hingedly" does not recite sufficient structure despite Beckson Marine's plea that "a hinge is a hinge, is a hinge!" The language "hingedly connecting" recites a function, not a particular defined structure. A "hinged connection" (already a stretch because this court has converted an active verb to a noun) could describe a vast number of movable links. Because claim 1 does not recite limited and definable structure performing the function of "hingedly connecting," this court affirms the district court's construction of this language as a means-plus-function limitation.

Having identified the "specified function" of the unspecified means, the district court properly looked to the specification to define the structure corresponding to this claimed function. The only structure recited in the specification that corresponds to the "hingedly connecting" function follows:

> There is also provided a molded plastic window pane 20, preferably transparent, which is hingedly connected to the mounting flange 12 as shown in FIG. 1. The pane 20 includes a peripheral flange portion 22 having a pair of hinge lugs 24, 26 pivotally secured to cooperable hinge

lugs 32, 34, 36 by means of a spring-type hinge pin. A second pair of hinge lugs 28, 30 is pivotally secured to cooperable hinge lugs 38, 40, 42 of the flange 12 by a hinge pin in the form of a screw 44 including a wing nut 46.

'350 patent, col. 3, ll. 19-28. In light of this disclosure, the district court properly construed the limitation "means hingedly connecting" to require "a windowpane connected to a mounting flange using hinge lugs pivotally secured to cooperable lugs b[y] means of a hinge pin, thus allowing the window to open and shut by pivoting about a hinge. The term also includes any structure that is equivalent to the proceeding structure . . . ." Construction Order at 13.

The district court found that NFM's accused devices do not satisfy the "means hingedly connecting" limitation because the accused devices do not have hinge lugs on the flange. Final Order at 4-5. Instead of hinge lugs, a T-shaped structure attached to the flange on the accused device cooperates with the hinge lugs located on the window. The district court initially made this factual finding in the context of denying a motion for summary judgment of infringement. See id. However, because the district court necessarily adopted this finding in its final determination after the parties submitted the case for final judgment on the record, this court reviews this factual finding under the clearly erroneous standard.

NFM's accused products have a port window with two hinge lugs. The flange has a T-shaped object that cooperates with the hinge lugs on the window. The T-shaped object consists of a metal tube along the top and a bolt extending downward. The bolt screws into the flange of the accused product. The metal tube forming the top of the T-shaped object fits between the hinge lugs on the window. A hinge pin passes through the hinge lugs and the metal tube, thereby securing the T-shaped object on the

flange to the hinge lugs on the window. Thus, the window is "hingedly connected" to the flange. This court sees no material difference between the structure of the metal tube of the T-shaped object on the flange and a hinge lug. Although the district court notes that the bolt allows the window to be moved closer to and further from the window to ensure a tight fit, Final Decision at 4, that function is additional to the "hingedly connecting" function required by claim 1. Consequently, the district court clearly erred in finding that NFM's accused devices do not have a structural equivalent of hinge lugs on the flange.

In its discussion regarding equivalents, the trial court denied infringement because, in part, "the hinge pins are flattened or deformed at their ends to lock them into place, making them permanent." Final Decision at 4-5. However, the district court's claim construction affirmed by this court places no limit on the type of hinge pin covered by claim 1. This court finds that the "means hingedly connecting" element is literally present in the accused device. Any contrary finding by the district court was clear error.

The district court's final decision states that literal infringement of the "means hingedly connecting" limitation was the only remaining issue. Id. at 2. This statement appears to be inconsistent with a prior order by the district court denying summary judgment of infringement because, inter alia, the drain groove of the accused products are not open for a "substantial portion."* Summary Judgment Order at 6.

The district court construed the "open for a substantial portion" limitation to require that the drain groove be "largely but not wholly open along the top." Construction Order at 9. The district court arrived at this construction based on events

---

* NFM is wrong in its assertion that the district court granted summary judgment of no infringement. See Summary Judgment Order at 10-11.

occurring during prosecution of the '350 patent. During prosecution, the applicant amended claim 1 by removing the term "upwardly open" and adding the "substantially open" limitation. Id. at 8. This amendment narrowed the claim by requiring the drain grooves to be open for a "substantial portion" of their lengths, thereby excluding from the scope of the claim drain grooves open for less than a substantial portion of their lengths. Thus, this court finds that the "substantially open" limitation calls for drain grooves that are "largely but not necessarily wholly open."

Notwithstanding the foregoing discussion, because the final order of the district court explicitly states that the "sole remaining issue" was satisfaction of the "means hingedly connecting" element, the district court necessarily found that the accused products satisfy the "substantially open drain groove" element even under the district court's overly restrictive claim construction. Consequently, the district court's error regarding the "substantially open" limitation in its Summary Judgment Order was harmless.

As noted, the alleged "sole issue" for the district court's final determination was infringement of the "means hingedly connecting" limitation. Id. at 2. Because this court reverses the district court's finding on that issue, this court also reverses the district court's finding of no literal infringement of claim 1 of the '350 patent.

B

NFM cross appeals the district court's grant of summary judgment of validity of the claims of the '350 patent. NFM argues that claim 1 is both anticipated and obvious. NFM argues that both a prior art NFM oval boat window and a Goiot 1974 boat window anticipate claim 1 of the '350 patent. The drain groove of the NFM oval boat window is

open for 30% of its length, at most.  Summary Judgment Order at 8.  The district court found that a drain groove open for 30% of its length does not create an issue of fact on whether the drain groove is "substantially open."  This court agrees.  Consequently, the district court correctly found that the NFM oval boat window cannot anticipate claim 1 as properly construed because the drain groove is not substantially open.  Id. at 9.  As regards the Goiot reference, the district court properly recognized that Beckson Marine I affirmed its earlier determination that the Goiot reference is not prior art to the '350 patent.  See Beckson Marine I, 292 F.3d at 727.  Thus, this court affirms the district court's grant of summary judgment that neither the NFM oval boat window nor the Goiot reference anticipates claim 1 of the '350 patent.

NFM argues that claim 1 of the '350 patent is obvious in light of the NFM oval boat window, the Goiot reference, U.S. Patent No. 4,095,640 (issued Jun. 20, 1978), U.S. Patent No. 4,112,645 (issued Sep. 12, 1978), and U.S. Patent No. 304,183 (issued Aug. 26, 1884) (Davis).  NFM argues that the "substantially open drain groove" element is taught by the NFM oval boat window, the Goiot reference, and Davis.  As explained above, the NFM oval boat window does not teach this limitation, and the Goiot reference is not prior art to the '350 patent.  Thus, NFM must rely on Davis to teach this limitation.

The district court refused to allow Davis into evidence.  Beckson Marine, Inc. v. NFM, Inc., No. C98-5531FDB, slip op. at 6 (W.D. Wash. May 21, 2004).  NFM did not attempt to introduce Davis into evidence until approximately three and one-half years after the close of discovery.  Id.  NFM discovered Davis "during a routine review" of two patents on boat windows issued to Mr. Beckerer, Jr., after the '350 patent.  Id.  Davis is

the first reference cited on the face of the subsequent patents, both of which issued by 1987.  Id.  The district court did not abuse its discretion by excluding Davis.  As the district court properly found, Davis could have been timely entered into evidence by NFM had it merely performed its "routine review" of the patents during the discovery period.

Because this court upholds the district court's exclusion of Davis, no reference cited by NFM teaches a substantially open drain groove.  Consequently, this court affirms the district court's grant of summary judgment that claim 1 of the '350 patent is not obvious in light of the prior art.

C

NFM's claims of inequitable conduct, Lanham Act violations, unfair competition under state laws, and anti-trust violations were all based on the alleged invalidity of the claims of the '350 patent.  Because this court upholds the validity of the claims of the '350 patent, these claims are dismissed as moot.  NFM's allegation of personal liability of Mr. Beckerer, Jr., is likewise dismissed as moot.

III

In summary, this court affirms the district court's ruling that claim 1 of the '350 patent is valid, and its dismissal of NFM's inequitable conduct, Lanham Act, state unfair competition, and anti-trust claims as moot.  This court reverses the district court's finding no infringement of claim 1, and remands to the district court for a determination of damages.

COSTS

Each party shall bear its own costs.

AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED